UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SITNET LLC,<br><br>                              Plaintiff,<br>  -against-<br>META PLATFORMS, INC.,<br>                              Defendant. | 23-cv-6389 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

    The Supreme Court's ruling in *Alice* breathed new life into § 101's patent-eligibility requirement. To decide § 101 motions, *Alice* tells courts to answer two questions: Is the patent directed to an "abstract idea"? If yes, is the patent nevertheless saved by an "inventive concept"? Courts often try to answer these questions at the pleading stage, with no evidence other than the patent itself. They size up the patent, employ imperfect analogies, and sift through Federal Circuit cases to find ones involving similar-sounding patent claims. Even for patent claims that seem cut from the same cloth, cases go in both directions. Needless to say, applying *Alice* isn't always easy. *See, e.g., Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1348 (Fed. Cir. 2018) (Plager, J., concurring in part and dissenting in part) ("The law … renders it near impossible to know with any certainty whether the invention is or is not patent eligible.").

    And resolving eligibility on a motion to dismiss is often in tension with basic pleading rules. The § 101 inquiry is searching, but, at the pleading stage, courts are supposed to accept the plaintiff's allegations as true and draw all inferences in its favor. Because of those bedrock rules, most issues in patent cases—including challenges akin to eligibility under § 101, like anticipation under § 102 or obviousness under § 103—are nearly always decided at summary judgment or trial, not on the pleadings.

    These difficulties are symptoms of a broader issue: surveying the cases reveals some lack of focus on what eligibility *is* exactly. Is eligibility an element of the plaintiff's claim, or is ineligibility a defense for the alleged infringer? Are *Alice*'s steps questions of law, fact, or both? What are the facts involved in the inquiry, who bears the burden of proof, and by what standard?

    These questions are all addressed below, but the main point is that, in applying *Alice*, courts are still bound by the usual rules that apply to motions to dismiss. That means avoiding factual calls that are really for summary judgment or the jury, and resisting the urge to make snap judgments about a patent's novelty or inventiveness. Applying these rules, and for the reasons stated below, Meta's motion to dismiss under *Alice* is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Plaintiff SitNet owns a group of patents claiming methods for creating a "situational network." Compl. ¶ 19, Dkt. 1. As SitNet defines it, a situational network is a network created in response to "an event or 'situation' … through which parties can be interconnected and receive information." *Id.* For example, those near an earthquake could be connected, enabling them to communicate with each other or get information about the disaster in real time. *Id.* According to SitNet, "[t]he inventive situational network was an unconventional architecture that allowed for increased efficiency and faster response times when interconnecting the parties when compared to conventional network architectures … that were only capable of maintaining static connections of users." *Id.* The network can be further refined to a "projected view," a "subnetwork" that connects specific users within a situational network. ¶¶ 22–23.

SitNet has sued Defendant Meta, Facebook's parent company, for patent infringement. Facebook is a social-networking site that has a feature called "Crisis Response" (previously known as "Safety Check"). ¶ 27. The feature enables Facebook users near a crisis to tell their friends that they are safe. *Id.* SitNet says Facebook also uses the data collected by the feature to deliver targeted ads. ¶¶ 28–30.

The complaint identifies four patents that have been infringed, Patent Nos. 11,470,682; 9,877,345; 8,332,454; and 8,249,932. Meta's opening brief identified one claim from each patent as representative, and SitNet analyzed one other claim in its brief. Because SitNet has "not present[ed] any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[s]" and the one other discussed in its brief, it has implicitly "agree[d] to treat [these] claim[s] as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). So the Court will analyze only those claims identified in Meta's and SitNet's briefs. Those claims are reproduced in full in the appendix, but here's one for context:

> A method of accessing situation related information, the method comprising:
>
> receiving an indication of an occurrence of a situation;
>
> forming a situational network related to the occurrence of the situation with a plurality of participant devices determined to be geographically proximate to the situation, each of the participant devices corresponding to a participant in the situational network;
>
> presenting a roll call query to each of the plurality of participant devices soliciting a reply related to a status of the participant;
>
> receiving a status response from one or more of the participants; and
>
> aggregating the status responses from responsive participants into a roll call list.

'345 Patent Cl. 1.

## LEGAL STANDARDS

### I. Rule 12(b)(6) and *Twombly*

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016). But if the complaint and patents-in-suit conflict, the complaint's allegations yield to the patents' specifications and claims. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

As discussed below, patent ineligibility is an affirmative defense to a claim of infringement. As an affirmative defense, the patent holder need not plead eligibility in its complaint. But ineligibility may be grounds for dismissal on a Rule 12(b)(6) motion when "the facts supporting the defense appear on the face of the complaint" and other materials a court may consider, like an attached patent. *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023).

Putting these standards together, the Federal Circuit has held that "patent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022).

### II. Section 101 and *Alice*

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." But "[l]aws of nature, natural phenomena, and abstract ideas" are "important implicit exception[s]." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Deciding whether a patent runs afoul of the "abstract idea" prohibition has two steps: (1) "determine whether the claims at issue are directed to" an abstract idea and, if so, (2) determine whether the patent adds an "inventive concept" making it patent-eligible nevertheless. *Id.* at 217–18.

"Patent eligibility is a question of law that may involve underlying questions of fact," particularly at the second step. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) (citation omitted). "The second step of the *Alice* test is satisfied when the claim limitations involve more than the performance of well-understood, routine, and conventional activities previously known to the industry" at the time of the patent. *Berkheimer*, 881 F.3d at 1368–69 (cleaned up); *see also Cooperative Ent., Inc.*, 50 F.4th at 130. "[W]hether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368; *see also Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023).

Ineligibility is an affirmative defense to an infringement claim. *See Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366 (Fed. Cir. 2019) ("In sum, we hold that a § 101 eligibility challenge is a defense to a claim of infringement."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330 n.3 (Fed. Cir. 2012) ("[T]he 'defenses provided in the statute,' [35 U.S.C.] § 282, include not only the 'conditions of patentability' in §§ 102 and 103, but also those in § 101." (citation omitted)); 35 U.S.C. § 282(a), (b)(2).

As an affirmative defense, the alleged infringer bears the burdens of pleading and proof. And in light of the presumption of validity that every patent enjoys, facts supporting ineligibility must be proved by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368.

Sometimes, claim construction is needed before deciding a § 101 motion. But if a party fails to raise the need for construction (as here) or doesn't explain how a disputed term's scope would affect the analysis, claim construction doesn't stop a court from deciding patent eligibility on the pleadings. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020).

To sum up: Meta can move to dismiss based on § 101. But even if SitNet's patent claims are directed to an abstract idea at *Alice* step one, Meta has to demonstrate at step two that the materials a Court can review at this stage (with all reasonable inferences drawn in SitNet's favor) foreclose even a "plausible factual dispute" about whether the claim limitations were "well-understood, routine and conventional to a skilled artisan in the field."

## DISCUSSION

### I. *Alice* step one: the '682 patent's representative claim is directed to an abstract idea

Step one asks whether the claims are "directed to" an abstract idea. "*Alice* step one presents a legal question that can be answered based on the intrinsic evidence." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (cleaned up).

In analyzing the claim language, courts must be careful not to define the claim's "idea" at too high a level of generality—otherwise, every patent could be characterized as simply embodying an abstract idea. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). To guard against this possibility, the court should closely track the claim language to "ascertain the basic character of the claimed subject matter." *Trinity*, 72 F.4th at 1361 (cleaned up).

In a long line of cases, the Federal Circuit has held that "collecting information, analyzing it, and displaying certain results" is a patent-ineligible abstract idea. *Trinity*, 72 F.4th at 1362. The '682 patent fits into that line, and its representative claim is strikingly similar to the claims in two of those cases: *Trinity* and *Sanderling*.

4

*Trinity* dealt with this claim:

> A poll-based networking system, comprising:
>
> a data processing system having one or more processors and a memory, the memory being specifically encoded with instructions such that when executed, the instructions cause the one or more processors to perform operations of:
>
>> receiving user information from a user to generate a unique user profile for the user;
>>
>> providing the user a first polling question, the first polling question having a finite set of answers and a unique identification;
>>
>> receiving and storing a selected answer for the first polling question; comparing the selected answer against the selected answers of other users, based on the unique identification, to generate a likelihood of match between the user and each of the other users; and
>>
>> displaying to the user the user profiles of other users that have a likelihood of match within a predetermined threshold.

72 F.4th at 1359.

The Federal Circuit held that this claim was "directed to the abstract idea of matching based on questioning." *Id.* at 1361. The claim involved collecting information (receiving user information), analyzing it (generating a profile), collecting more information (asking a question and receiving the user's answer), analyzing it (generating match likelihood), and then displaying results (showing the user likely matches).

In *Sanderling*, the Federal Circuit considered this claim:

> A computerized method of distributing a digital image processing function, said computerized method comprising:
>
>> using at least one server having at least one hardware processor and over a network to access a database storing at least one digital image processing function associated with at least one distribution rule defining a geographic location;
>>
>> receiving, over said network, a Global Positioning System (GPS) location indication from each of a plurality of mobile devices, each said location indication is determined according to a GPS module executed by one of said plurality of mobile devices;
>>
>> matching, using said at least one hardware processor, each said GPS location indication with said geographic location; and
>>
>> automatically forwarding, over said network and in response to receiving said Global Position System (GPS) location indication, said at least one

5

> digital image processing function to at least one mobile device of said plurality of mobile devices, said at least one mobile device having a respective said GPS location indication which matches said geographic location;
>
> wherein said at least one image processing function is set to be used by an application executed on said at least one mobile device to process a digital image designated at said at least one mobile device to create an output digital image.

65 F.4th at 701–02.

The Federal Circuit said this claim was "directed to the abstract idea of providing information … based on meeting a condition, *e.g.*, matching a GPS location indication with a geographic location." *Id.* at 703 (internal quotation marks omitted). The claim fell into the same collect-analyze-display category. The "'distribution rule' merely receives, matches, and then distributes the corresponding function based on the user's location," which is an ineligibly "generic set of steps." *Id.*

The '682 patent's representative claim (claim 11) falls in the same bucket. Here's the claim:

> A method for providing roll call based information, the method comprising:
>
> receiving, at a central server, an information item from a user device, wherein the information item identifies a situation;
>
> making the information item available to a first plurality of user devices;
>
> verifying that the information item is related to the situation; and
>
> in response to the verifying, making a message board related to the situation available to a second plurality of user devices;
>
> wherein the second plurality of user devices was identified based on the second plurality of user devices being geographically proximate to the situation;
>
> and wherein the message board comprises a roll call list that includes status responses to roll call queries that were provided to the second plurality of user devices in order to solicit the status responses.

'682 Pat., cl. 11.

In a nutshell, this claim involves collecting information identifying a situation, providing that information to a set of users, analyzing the information to make sure it is related to the situation, and then providing other information (a message board with a roll call list) to a second set of users (those near the situation). Unlike SitNet's other claims, claim 11 doesn't require forming a "situational network," "automatically" connecting users or redirecting applications, or using "projections" of an existing situational network. At best, it provides the kind of "distribution rule … based

6

on the user's location" that *Sanderling* held was "generic." And other than referring to a "server" and "devices," claim 11 isn't tethered to technology. It boils down to "get information to people in a crisis—but through computers." *Cf. Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("An abstract idea on an Internet computer network … is still an abstract idea." (internal quotation marks omitted)). Because claim 11 isn't reasonably distinguishable from the claims in *Trinity* and *Sanderling* or the collect-analyze-display group more generally, it is directed to an abstract idea.

SitNet's claims in the '345, '454, and '932 patents might also be directed to abstract ideas. But those claims raise plausible factual disputes over inventiveness, as discussed below. So there's no need to resolve the step one question right now.

## II. *Alice* step two: plausible factual disputes underlie the '345, '932, and '454 claims

At step two, the claims are analyzed "more microscopically" for an inventive concept. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). "[V]iewing the claim limitations individually or as an ordered combination," the claims must "add an inventive concept that would be 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Trinity*, 72 F.4th at 1366 (quoting *Alice*, 573 U.S. at 217–18 (alteration adopted)). As noted above, the Federal Circuit has described this inquiry as focusing on whether "the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367 (cleaned up). Although the claims in *Trinity* and *Sanderling* also failed at this step, it presents "a question of fact," so the Court must pay close attention to the record in this case. *Id.* at 1368. Meta must show that, on the face of the complaint and accompanying materials, there is "no plausible factual dispute[]" over whether the claims are inventive. *Cooperative Ent.*, 50 F.4th at 131.

Although an inventive concept may come in many forms, a "district court is correct to search for an inventive concept in precisely the factors that [the plaintiff] argues comprise[] the inventive concept." *Secured Mail*, 873 F.3d at 911. SitNet has summed up its inventiveness by saying that the patents "embody an unconventional computer network that can automatically project a situational network made up of a subset of those network user devices that may be affected by an event or other situation, even if those users are unaware that the event or situation is occurring." Dkt. 40 at 5. This view of inventiveness creates a plausible factual dispute for some of the claims.

### A. The '682 patent lacks an inventive concept

The '682 patent is not so lucky. As noted above, that patent's representative claim doesn't include any of the features that SitNet touts as inventive. Nor is it grounded in any inventive technology. So this claim's lack of inventiveness is established on the face of the intrinsic evidence. *See Trinity*, 72 F.4th at 1367 (holding that there was "no inventive concept where claims merely recited 'generic features' or 'routine functions' to implement the underlying abstract idea." (citation omitted)); *Berkheimer*, 881 F.3d at 1369 (finding no inventive concept when the claim didn't "recite any of the purportedly unconventional activities").

### B. The '345, '932, and '454 patents' representative claims are plausibly inventive

The representative claims of the '345, '932, and '454 patents, by contrast, have enough to nudge them from the abstract to the plausibly concrete. The '345 patent presents the closest call. In many ways, it simply recites collecting, analyzing, and providing information to users. But unlike *Trinity*, *Sanderling*, and the '682 patent, claim 1 of the '345 patent discloses, in response to "receiving an indication of the occurrence of a situation," "*forming* a situational network related to the occurrence of the situation with a plurality of participant devices determined to be geographically proximate to the situation, each of the participant devices corresponding to a participant in the situational network." (Emphasis added.)

SitNet alleges that its method of formation was inventive. It says that "conventional networks were static and could not be created on the basis of an event or situation" and "failed to include the ability for non-participants to communicate with impacted users." Compl. ¶¶ 37, 39. A situational network, according to SitNet, offers an alternative. The traditional model is known as a "pull model," but a situational network uses a "push model," meaning "proactively send[ing]" users information. ¶¶ 53–54. Meta hasn't pointed to any intrinsic evidence contradicting these allegations. So there is a plausible factual dispute over whether a situational network in fact operates in this way and whether that operation was inventive.

Turning to the '932 patent, it involves using situational networks to deliver targeted advertising. The representative claims disclose "automatically connecting devices" to a situational network in response to a situation and then "causing an automatic redirection of a web browser application" to a webpage with information about the situation. The website then conveys advertising tailored to the users based on a determination that they are affected by the situation.

Targeted advertising alone is not inventive. *See Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). But automatically forming and redirecting users within a situational network might be. The complaint alleges that "[c]onventional systems … had no mechanism for automatically identifying impacted individuals (including non-participants) and interconnecting them within the network," nor did they "teach causing an automatic redirection of a web browser application." Compl. ¶¶ 39, 41. Taken as true, there is at least a plausible dispute over whether the '932 patent's representative claims describe something "well-understood, routine, [or] conventional."

The '454 patent deals with projections. Its representative claim discloses creating a situational network by an "event node server," forming a "projection" (i.e., subset) of network nodes based on location, linking those nodes to the event-node server based on accepted invitations, then sending information from the event-node server to the devices.

The '454 patent's specification says a projection is desirable, compared to distributing messages across the entire network, due to the potential "need to increase processing speed and reduce resource requirements such as CPU speed and memory size." '454 Patent Spec. 16:17–30. True, "merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Intell. Ventures*, 792 F.3d at 1370. But

when the patent claims a method for reorganizing computer functionality, improved efficiency can reflect an improvement over the "routine" or "conventional" understanding. *See, e.g.*, *Berkheimer*, 881 F.3d at 1369; *Bascom*, 827 F.3d at 1351. And here, "the Patent Office found that conventional systems failed to teach creating two or more projections of the nodes of the multi-dimensional personal information network based at least in part on the access levels of the individuals corresponding to each of the personal information aggregators." Compl. ¶ 46. So, again, there is at least a "plausible factual dispute" over inventiveness.

\* \* \* \* \*

One might be skeptical that the '345, '452, and '932 patents add anything inventive. But skepticism alone is not grounds for dismissing a complaint. The Supreme Court has recognized that a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [alleged in the complaint] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation omitted). That rule applies with extra force here. Meta's motion is based on a defense, not an element of SitNet's claims that it had to plausibly allege. And that defense involves a question of fact, asking what was "well-understood, routine and conventional" to "skilled artisans" in a technological field at "the time of the patent." *Berkheimer*, 881 F.3d at 1368–69. That question is not one that judges are well-suited to answer on their own, so SitNet will get the chance to submit evidence on it.

## CONCLUSION

For these reasons, the motion to dismiss is GRANTED with respect to the asserted claims in the '682 patent, and it is DENIED with respect to the asserted claims in '345, '932 and '454 patents. The Clerk of Court is respectfully directed to terminate Dkt. 26.

SO ORDERED.

Dated: March 19, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge

## APPENDIX

| | |
|---|---|
| '345 Patent Claim 1 | A method of accessing situation related information, the method comprising:<br><br>receiving an indication of an occurrence of a situation;<br><br>forming a situational network related to the occurrence of the situation with a plurality of participant devices determined to be geographically proximate to the situation, each of the participant devices corresponding to a participant in the situational network;<br><br>presenting a roll call query to each of the plurality of participant devices soliciting a reply related to a status of the participant;<br><br>receiving a status response from one or more of the participants; and<br><br>aggregating the status responses from responsive participants into a roll call list. |
| '682 Patent Claim 11 | A method for providing roll call based information, the method comprising:<br><br>receiving, at a central server, an information item from a user device, wherein the information item identifies a situation;<br><br>making the information item available to a first plurality of user devices;<br><br>verifying that the information item is related to the situation; and<br><br>in response to the verifying, making a message board related to the situation available to a second plurality of user devices;<br><br>wherein the second plurality of user devices was identified based on the second plurality of user devices being geographically proximate to the situation; and<br><br>wherein the message board comprises a roll call list that includes status responses to roll call queries that were provided to the second plurality of user devices in order to solicit the status responses. |
| '932 Patent Claim 1 | A method of presenting targeted advertising in a situational network, the method comprising:<br><br>receiving a plurality of advertisements from at least one advertising entity;<br><br>obtaining an indication of an occurrence of a situation;<br><br>automatically connecting devices corresponding to a plurality of individuals to the situational network established in response to the situation;<br><br>causing an automatic redirection of a web browser application operating on each of the devices to a webpage containing information related to the situation; and<br><br>providing to each of the devices at least one of the plurality of advertisements for display on the webpage based on determining an affiliation of the corresponding individual to the situation, wherein |

| | |
|---|---|
| | the affiliation is based at least in part on an effect of the situation on the corresponding individual or their property. |
| '932 Patent Claim 22 | A system for presenting targeted advertising in a situational network, the system comprising: |
| | a central server, corresponding to a situation authority, configured to receive a plurality of advertisements from at least one advertising entity, obtain an indication of an occurrence of a situation, automatically connect devices corresponding to a plurality of individuals to the situational network established in response to the situation, cause an automatic redirection of a web browser application operating on each of the devices to a webpage containing information related to the situation, and provide at least one of the plurality of advertisements to each of the devices for display on the webpage based on determining an affiliation of the corresponding individual to the situation, wherein the affiliation is based at least in part on an effect of the situation on the corresponding individual or their property; and |
| | a database associated with the central server for storing information related to availability of a service at a plurality of service locations affected by the situation; and |
| | a plurality of devices, each device corresponding to an individual connected via the situational network, configured to connect to the central server, and receive at least one of the advertisements based on the affiliation of the respective individual to the situation. |
| '454 Patent Claim 1 | A method of creating a projection of a situational network, the method comprising: |
| | (a) creating, by an event node server, an event node in a multidimensional personal information network, the event node corresponding to a situation; |
| | (b) forming a projection of nodes of the situational network using geographic locations of a plurality of devices corresponding to nodes in the multi-dimensional personal information network; |
| | (c) transmitting an invitation to establish a link with the event node server to the devices corresponding to each node in the projection formed in step (b); |
| | (d) receiving a response from at least one of the devices from step (c) accepting the invitation to establish a link with the event node server; and |
| | (e) establishing a link with each device accepting the invitation. |